Nina Wasow (SBN 242047)
Daniel Feinberg (SBN 135983)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
Email: nina@feinbergjackson.com
       dan@feinbergjackson.com

*Attorney for Plaintiff Robert Perry Leslie*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT PERRY LESLIE,<br><br>           Plaintiff,<br><br>     v.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA and KPMG LLP LONG TERM DISABILITY INSURANCE PLAN,<br><br>           Defendants. | No. 5:20-cv-04691<br><br>**COMPLAINT (ERISA)** |

1

**JURISDICTION**

1. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

2. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant KPMG LLP Long Term Disability Insurance Plan (the "Plan") is administered in part in this District, and because Defendants may be found in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**INTRADISTRICT ASSIGNMENT**

3. This action is properly assigned to the San Jose Division because the Plan is administered in part in Santa Clara, and because some of the events or omissions giving rise to Mr. Leslie's claim occurred in Santa Clara.

**THE PARTIES AND THE PLAN**

4. At all relevant times, Plaintiff Robert Perry Leslie ("Mr. Leslie" or "Plaintiff") was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. At some relevant times, Mr. Leslie resided in Los Gatos, California. Mr. Leslie now resides in Thibodaux, Louisiana.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by KPMG LLP.

6. At all relevant times, the Plan offered long-term disability benefits to partners, including Plaintiff, through an insurance policy issued by Defendant Prudential Insurance Company of America ("Prudential"), with the group policy number G-43764-DE. At all relevant times, Prudential was responsible for making decisions on claims under the Plan.

2

# FACTS

**A.   Plaintiff's Work and the Plan's Definition of Disability.**

7. Mr. Leslie is a Certified Public Accountant who worked at KPMG for more than 16 years. He was a Lead Tax Partner until he went on medical leave in February 2018. He worked in the Santa Clara office of KPMG from October 1, 2015 to February 28, 2019.

8. As Lead Tax Partner, Mr. Leslie's responsibilities included managing between 25 and 30 client relationships for publicly traded corporations with financial reporting obligations to the Securities and Exchange Commission ("clients"), maintaining a minimum of $3 million in annual service revenue, attracting new clients, remaining proficient with various financial and tax developments, developing and maintaining business networks, sharing industry knowledge, and recruiting and training new employees.

9. On a daily basis, partners at KPMG must read and respond to a high volume of emails, review and respond to technical memoranda or opinions and work papers, manage teams of people, coordinate and review quarterly and annual audit work for publicly traded SEC clients, coordinate any other tax services provided to clients, and travel as needed by clients. To stay on top of these tasks, Mr. Leslie typically worked between 10- and 16-hour days.

10. Under the Plan, you are Disabled if "[Y]ou are unable to perform the *material and substantial duties* of your *regular occupation* as a partner at KPMG or any other 'Big Four' accounting firms due to your *sickness or injury*."  "Big Four" is a shorthand term used to refer collectively to the four largest professional services networks in the world, one of which is KPMG.

11. The Plan defines material and substantial duties as "duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified."

**B.   Plaintiff's Medical Conditions and Departure From Work.**

12. Mr. Leslie has experienced a slow but significant decline in his cognitive abilities as a result of the multiple head traumas he has sustained in his life, starting at the age of 10 and most significantly in a 2011 auto accident.

3

13. Mr. Leslie began noticing the cognitive deficits around 2008. He was initially able to treat these deficits with medicine. However, after the car accident in 2011, in which Mr. Leslie suffered another concussion, the medication became less effective, and Mr. Leslie also experienced severe back and neck pain requiring him to have multilevel cervical spinal fusion surgery. After another car accident in 2013, Mr. Leslie's condition worsened further.

14. Mr. Leslie developed difficulties with concentration and recall as a result of his numerous traumatic brain injuries from multiple car accidents and playing college football. As discussed by a neuropsychologist who evaluated Mr. Leslie in 2019, "Mr. Leslie's lengthy history of repeated head injuries . . . cumulatively, account for the pattern and severity of his cognitive impairment." The neuropsychologist noted that the DSM-5 recognizes that neurocognitive disorders resulting from TBIs can manifest slowly over time: "'repeated mild TBI may be associated with persisting neurocognitive disturbance,' . . . and even with a mild TBI, "… Resolution may be delayed or incomplete in the context of repeat TBI."

15. In his last months of work at KPMG, Mr. Leslie would repeatedly lose his train of thought and have to restart his work, causing him to struggle with routine tasks such as replying to client or staff emails. By January 2018, an email that would previously have taken him five minutes to write instead took fifteen minutes. Even then, peers were often disappointed with his responses, requesting more information or informing him that he had addressed the wrong topic or forgotten an important point. In addition, during discussions with prospective clients or other members of the firm, Mr. Leslie had trouble focusing on what other people were saying and holding questions in his mind long enough to answer them. Due to his inability to maintain focus and filter through ordinary external stimuli such as background noises or flickering lights, Mr. Leslie made simple mistakes that he would previously have been able to catch.

16. As Mr. Leslie described it, "[e]ngaging with one topic would suddenly release a flood of related and semi-related information, distracting me from the original task. This kind of processing problem is a daily occurrence for me and caused me to work at a very slow pace."

17. Though he started working longer hours to try to keep up, Mr. Leslie's job performance suffered. Other KPMG employees and clients often became frustrated by his

mistakes and unresponsiveness. Mr. Leslie's former supervisor, Melissa Hardaway, later explained that his performance issues appeared to stem from him "actually having trouble keeping track of information."

18. Mr. Leslie also has several chronic pain conditions that further compromise his ability to focus and to complete tasks. His back, neck, shoulder, and arm pain, exacerbated by long periods of sitting in the same position, became increasingly distracting over time. Mr. Leslie also experiences painful headaches, which were aggravated by looking at his computer screen at work. He developed insomnia, since his physical pain makes it difficult for him to fall asleep and stay asleep, and this insomnia compounds his cognitive impairments.

19. Mr. Leslie takes multiple medications for these conditions, including Flexeril for pain and muscle spasms, Neurontin for nerve pain and muscle spasms, Vyvanse for attention issues, Vortioxetine for cognitive issues, and Melatonin and Ambien for insomnia. These medications, with the exception of Vyvanse, make him significantly drowsy during the day, further inhibiting his ability to work.

20. By the beginning of 2018, as a result of the continuous, gradual decline in his cognitive abilities, his chronic pain, and the side effects of medications he takes for these conditions, Mr. Leslie was unable to perform the material duties of his job. He went out on disability leave in February 2018.

**C.    Prudential's Denial of Plaintiff's Benefits.**

21. Mr. Leslie's application for long-term disability benefits was denied by Prudential on February 1, 2019.

**D.    Mr. Leslie is Disabled as a Result of Cognitive Impairment and Pain.**

22. In April and May of 2019, Dr. Jonathan Canick, a member of the Department of Neurosciences at California Pacific Medical Center, administered a neuropsychological evaluation of Dr. Leslie.

23. Dr. Canick found that Mr. Leslie's capacity for basic attention and concentration was in the low-average range overall, that he displayed difficulty in acquiring new information, that he had a significant attention problem, and that he exhibited "hypo-arousal," or difficulty

regulating the amount of effort and arousal needed for a task. Dr. Canick also found that Mr. Leslie's verbal working memory and verbal learning were average, showing a decline in his functioning since 2013 neuropsychological testing.

24. Because Mr. Leslie's educational and vocational history is consistent with neuropsychological functioning in the superior to very superior range, Dr. Canick noted that Mr. Leslie's results reflected a substantial departure from the expected. Dr. Canick concluded that the results reveal the existence of a "significant neurocognitive disorder," which renders Mr. Leslie unable to perform successfully the essential duties of most professional-level occupations and positions.

25. Dr. Canick's conclusions are consistent with several previous neuropsychological evaluations that Mr. Leslie underwent, which show deficits in verbal and visual memory and attention, slowed processing speed, and impaired learning efficiency. Mr. Leslie's neurologist and neuropsychologist at Stanford determined in November 2018 that he would have difficulty working in any job that required "learning large amounts of new information," "rapid multitasking," "prolonged reading," or "completing non-perfunctory tasks that require sustained focus and consistent attention to detail."

26. Moreover, a March 2018 MRI of Mr. Leslie's brain shows abnormalities of the septum pellucidum, which is considered a marker for repetitive traumatic brain injury (TBI). Taking Mr. Leslie's history of playing collegiate football and sustaining other head injuries into account, neurologists at the UCSF Memory and Aging Center determined that Mr. Leslie meets the criteria for Traumatic Encephalopathy Syndrome.

27. Mr. Leslie also underwent a Functional Capacity Evaluation at the Center for Career Evaluations on April 8 and 9, 2019. The examiner found that Mr. Leslie's pain limited his range of motion and prevented him from maintaining a workstation on a regular and consistent basis, that Mr. Leslie had lower than expected performance on the logical problem-solving abilities test and the Perceptual Speed and Accuracy subtest on the CAPS Aptitude test, and that he had put forth consistent effort throughout the testing.

28. Based on the results of the evaluation, the examiner opined that Mr. Leslie did not

1  have the physical capacity or general mental stamina to perform work as a partner in a big-four
2  accounting firm, because "he would be unable to meet the performance standards relating to
3  maintaining a regular work schedule with reasonable continuity, performing sophisticated and
4  technical job duties at an appropriate persistence and pace, maintaining fixed work positions,
5  engaging in continuous keyboarding activities, and meeting demanding deadlines."

6  29.   Indeed, Mr. Leslie struggles with activities of daily living as a result of his
7  cognitive deficits. His wife observed that he uses certain words repetitively and has difficulty
8  with tasks that he previously could perform quickly and easily, such as doing the family's taxes.
9  He also asks his wife to drive with him now, because of his foggy memory: he has sat at
10 intersections as if in a daze, missing a green light, and on multiple occasions has arrived at a
11 destination and not remembered the drive there. Mr. Leslie is capable of light physical activity,
12 but it still aggravates his pain. He is more able to tolerate pain when it is not coupled with mental
13 exertion, and he takes additional rests and medication in order to manage his pain and fatigue.

14 30.   In denying Mr. Leslie's claim, Prudential erroneously relied on a flawed
15 independent neuropsychological evaluation; improperly discounted the disabling impact of Mr.
16 Leslie's chronic pain; failed to consider Mr. Leslie's actual job duties; and failed to consider the
17 impact of side effects of Mr. Leslie's medications.

18 31.   Mr. Leslie appealed Prudential's denial of his claim for LTD benefits on July 31,
19 2019. He submitted a supplement to this appeal, responding to evidence generated by Prudential
20 and providing additional evidence, on December 6, 2019. Prudential denied the appeal by letter
21 dated February 12, 2020.

22 32.   Plaintiff has exhausted his administrative remedies.

23 33.   At all relevant times, Plaintiff has been disabled within the meaning of the Plan.

**CLAIM FOR RELIEF**
**(ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))**
**(Claim for Benefits)**

26 34.   Plaintiff realleges and incorporates herein by reference the allegations in
27 paragraphs 1 through 33 as though fully set forth herein.

28 35.   ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to

bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

36. At all relevant times, Mr. Leslie has been entitled to long-term disability benefits under the Plan for his disabling conditions.

37. By denying Plaintiff's application for long-term disability benefits under the Plan, and by related acts and omissions, Prudential has violated, and continues to violate, the terms of the Plan and Mr. Leslie's rights thereunder.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendants have violated the terms of the Plan by denying Mr. Leslie's claim for long-term disability benefits from February 26, 2019, to the date of judgment;

B. Order Defendants to pay long-term disability benefits to Plaintiff pursuant to the terms of the Plan from February 26, 2019, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Declare Plaintiff's right to receive future long-term disability benefit payments under the terms of the Plan;

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

E. Provide such other relief as the Court deems equitable and just.

Dated: July 14, 2020

Respectfully submitted,

FEINBERG, JACKSON,
WORTHMAN & WASOW, LLP

By: _/s/ Nina Wasow_____
    Nina Wasow
    Attorney for Plaintiff